# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No.  7:12-cv-00033-RAJ |
| ASPEN UNDERWRITING LIMITED; and DORNOCH, LTD. | ) ) ) ) | |
| Defendants. | ) | |

## IRONSHORE SPECIALTY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### *Preliminary Statement*

Plaintiff, Ironshore Specialty Insurance Company ("Ironshore"), issued a Commercial Umbrella Liability Policy to Endeavor Energy Resources, L.P., ("Endeavor") bearing Policy No. 01Q0W0906001, effective November 1, 2009 to November 1, 2010, with limits of $10 million per occurrence and in the aggregate (the "Ironshore Policy").[1] The Ironshore Policy specifically provides that it is excess over any other insurance available to Endeavor and its affiliate company, Exxcel Well Services, Inc. ("Exxcel").[2]

Ironshore seeks a judicial determination of the total amount of "other insurance" available to Endeavor and Exxcel under the following undisputed facts:

---

[1] Declaration of Sanford Oster and Ironshore Policy, Exhibit "A."
[2] Exhibit "A", p. 3; *See also* Exhibit "A" at Section V – Conditions.

(1)     Basic Energy Service, L.P. ("Basic"), Endeavor and Exxcel are parties to a Master Service Agreement ("MSA") wherein Basic agreed to provide maintenance services to wells owned by Endeavor;

(2)     The MSA contains mutual indemnity obligations requiring Basic to defend and indemnify Endeavor and Exxcel for all claims, without limit, brought by Basic's employees or their heirs, for personal injuries and/or death;

(3)     As a separate and independent obligation, the MSA also contains mutual insurance obligations requiring Basic to obtain primary and excess insurance coverage; have its primary and excess policies endorsed to name Endeavor and Exxcel as additional insureds; have the policies endorsed to waive subrogation against Endeavor and Exxcel; and have the policies endorsed so that Basic's primary and excess insurance coverage is primary and non-contributory with any other liability insurance available to Endeavor and Exxcel;

(4)     A flash fire occurred on or about August 19, 2010 at the Herren 5-8 Well #4 owned and operated by Endeavor and located in Martin County, Texas while the well was being serviced by employees of Basic and Exxcel;

(5)     As a result of the accident two (2) Basic employees, Abel Garcia and Fernando Zamora, were severely burned and later died. Lawsuits were subsequently filed against Endeavor, Exxcel and others by the Estate of Abel Garcia; by Mr. Garcia's mother and four (4) minor children; by the Estate of Fernando Zamora; and by Mr. Zamora's wife and three (3) minor children;

(6)     Basic had three layers of liability insurance coverage in effect at the time of the incident, including a primary Commercial General Liability Policy issued by National Union

Fire Insurance Company of Pittsburgh, PA, which provides a $1 million per occurrence limit of liability ("the Primary Policy"); a first layer excess liability insurance policy issued by defendant, Aspen, and other subscribing underwriters, which provides a $10 million limit of liability ("the First Layer Excess Policy"); and a second layer excess liability insurance policy issued by defendant, Dornoch, and other subscribing underwriters, which provides a $40 million limit of liability ("the Second Layer Excess Policy"), and which is excess of the First Layer Excess Policy[3];

(7)     After the *Garcia* and *Zamora* lawsuits were filed, Endeavor and Exxcel made demand on Basic and its insurers for defense, indemnity, and insurance coverage under Basic's primary and excess insurance policies.  National Union immediately accepted the tender and on November 5, 2010 unconditionally acknowledged that Endeavor and Exxcel were named as additional insureds on the Primary Policy, after which National Union appointed defense counsel to represent Endeavor and Exxcel in connection with the lawsuits;

(8)     On April 11, 2011, after receiving settlement demands well in excess of the $1 million limit of liability provided by the National Union Primary Policy, and in excess of the $10 million limit of liability provided by the First Layer Excess Policy, Endeavor, Exxcel, and Ironshore made demand on Basic's excess insurers for coverage under the First Layer Excess Policy and under the Second Layer Excess policy;

(9)     Basic's First Layer excess insurer, Aspen, subsequently acknowledged coverage for Endeavor and Exxcel under the First Layer Excess Policy, but has taken the position that, under the MSA, Endeavor and Exxcel are only entitled to $4 million in excess insurance

---

[3] Although Basic has additional excess liability insurance coverage in excess of the Second Layer Excess policy, that coverage is not implicated by this claim.

coverage rather than the $10 million limit of liability provided by the First Layer Excess Policy, even though the claims asserted against Endeavor and Exxcel exceed the First Layer Excess Policy's $10 million limit of liability; and

(10)   Basic's Second Layer excess insurer, Dornoch, whose policy follows form to the First Layer Excess Policy, denies that Endeavor and Exxcel are entitled any coverage under the Second Layer Excess Policy.

Ironshore seeks a judgment, as a matter of law, declaring coverage for Endeavor and Exxcel under the Basic excess insurance policies as follows:

- Endeavor and Exxcel are Insureds under the First Layer Excess Policy issued by Defendant, Aspen;

- Endeavor and Exxcel are Insureds under the Second Layer Excess Policy issued by Defendant, Dornoch;

- The First Layer Excess Policy provides $10 million of liability insurance coverage to Endeavor and Exxcel for satisfaction of the claims arising out of the deaths of Abel Garcia and Fernando Zamora; and

- The Second Layer Excess Policy provides $40 million of liability insurance coverage to Endeavor and Exxcel for satisfaction of the claims arising out of the deaths of Abel Garcia and Fernando Zamora.

## FACTUAL BACKGROUND

This insurance dispute arises out of an incident involving a flash fire on or about August 19, 2010, at the Herren 5-8 Well #4 owned and operated by Endeavor and located in Martin County, Texas. The accident resulted in severe burns to two (2) Basic employees, Abel Garcia

4

and Fernando Zamora, who later died. Lawsuits were subsequently filed against Endeavor and

Endeavor's subsidiary, Exxcel, by the Estate of Abel Garcia and by Mr. Garcia's mother and

four (4) minor children; and by the Estate of Fernando Zamora and Mr. Zamora's wife and three

(3) minor children.[4]

**I.      Master Service Agreement**

At the time of the accident, Basic was bound by an MSA with Endeavor to perform

certain work, including but not limited to the maintenance of wells owned by Endeavor. The

MSA contains mutual indemnity obligations that require Basic to defend and indemnify

Endeavor and Exxcel for all claims, without limit, for personal injuries to or the death of any

Basic employees.[5]

As a separate and independent obligation, the MSA also requires Basic to:  (1) obtain

primary and excess insurance coverage and have its primary and excess insurance policies

---

[4] See *W. Brice Cottongame, as Personal Representative of the Estate of Abel Garcia, et al. v. Endeavor Energy Resources, L.P., et al*, which is a copy of the Garcia Plaintiffs' Fourth Amended Petition in the 67th Judicial District Court of Tarrant County, Texas, Cause No. 067-25089711 (the "Underlying Lawsuit"), Exhibit "1."

[5] The MSA contains mutual indemnity obligations on the part of Endeavor and Basic.  With respect to Basic's indemnity obligations, the MSA provides as follows:
**7.1   CONTRACTOR SHALL RELEASE OPERATOR** FROM ANY LIABILITY FOR, AND SHALL PROTECT, INDEMNIFY OPERATOR, CONSULTANTS, SUBSIDIARIES, AND AFFILIATES AND ALL OFFICERS, DIRECTORS, EMPLOYEES, AND JOINT OWNERS OF EACH FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, ARISING IN CONNECTION HEREWITH IN FAVOR OF CONTRACTOR'S EMPLOYEES, ITS SUBCONTRACTORS AND THEIR EMPLOYEES, AND CONTRACTORS INVITEES ON ACCOUNT OF BODILY INJURY, DEATH, OR DAMAGE TO PROPERTY. CONTRACTOR'S INDEMNITY UNDER THIS CONTRACT SHALL BE WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY OPERATOR.
*See* Exhibit "2."

endorsed to name Endeavor and Exxcel as additional insureds; (2) have the policies endorsed to waive subrogation against Endeavor and Exxcel; and (3) have the policies endorsed to be primary and non-contributory with any other liability insurance available to Endeavor and Exxcel for any occurrence, accident, or claim arising out of personal injuries to or the death of Basic employees.[6]

## II.    Basic's Insurance Policies

Basic has three layers of insurance implicated by the deaths of Abel Garcia and Fernando Zamora, including: (1) a $1 million primary Commercial General Liability policy issued by National Union; (2) a first layer excess liability policy issued by defendant, Aspen, and other subscribing underwriters, which provides a $10 million limit of liability; and (3) a second layer excess insurance policy issued by defendant, Dornoch, and other subscribing underwriters, which provides a $40 million limit of liability, and which is excess of the First Layer Excess Policy. In accordance with the contractual obligations contained in the MSA between Endeavor and Basic, the Basic policies were endorsed to include Endeavor and Exxcel as insureds; waive subrogation against Endeavor and Exxcel; and be primary and non-contributory with any insurance coverage available to them.[7]

## III.   The Coverage Dispute

On October 28, 2010, after the underlying lawsuits were filed, Endeavor tendered the lawsuits to Basic's primary insurance carrier, National Union, which accepted the tender and

---

[6] Master Service Agreement between Basic Energy Services, LP and Endeavor Energy Resources, LP dated June 18, 2009, Exhibit "2." *See also* Ironshore's Second Amended Complaint for Declaratory Judgment, Docket No. 21, ¶19, attached as Exhibit "3"; and Defendants' Answer to Complaint for Declaratory Judgment, Docket No. 23, ¶XIX, attached as Exhibit "4."

[7] Exhibit "3", at ¶19; Exhibit "4" at ¶XIX.

acknowledged Endeavor and Exxcel were entitled to contractual defense and indemnification and additional insured coverage for the underlying lawsuits.[8] Thereafter, National Union appointed counsel to represent Endeavor and Exxcel.

On or about April 11, 2011, after receiving settlement demands from the underlying claimants well in excess of the limits of liability provided by the National Union Primary Policy and the First Layer Excess Policy, Endeavor, Exxcel and Ironshore made demand on Basic's excess insurers for coverage for Endeavor and Exxcel for the underlying lawsuits up to the full limits of liability provided by the First Layer Excess Policy and the Second Layer Excess Policy.[9] In response, Basic's First Layer Excess insurers agreed Endeavor and Exxcel were entitled to coverage under the First Layer Excess Policy, but took the position they were only entitled to $4 million in excess coverage rather than the $10 million limit of liability provided by the First Layer Excess Policy.[10] Thereafter, Basic's Second Layer Excess insurers refused to acknowledge coverage for Endeavor and Exxcel under the Second Layer Excess Policy, despite the fact the Second Layer Excess Policy follows form to the First Layer Excess Policy and names Endeavor and Exxcel as insureds.[11]

---

[8] November 5, 2010 letter from Chartis Claims, Inc. on behalf of National Union Fire Insurance Company acknowledging demand of October 28, 2010 and accepting Endeavor and Exxcel's demand for additional insured status, attached as Exhibit "5."
[9] Correspondence to counsel for Basic's Underwriters from Randell E. Treadaway dated April 11, 2011, attached as Exhibit "6."
[10] January 17, 2012 correspondence from counsel for Aspen and Dornoch, attached as Exhibit "7."
[11] Exhibit "3" at ¶2 and Exhibit "4" at ¶II.

## LAW AND ARGUMENT

### I.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment; however, it need not produce evidence showing the absence of an issue of fact with respect to an issue on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[12]

### II.    BASIC'S INSURANCE POLICIES

Basic has two contracts for excess insurance that are the subject of this Complaint for Declaratory Judgment:

*First Layer Excess Policy*--Lloyd's & Partners, Ltd.'s Excess Claims Made Liability Policy bearing Policy No. PE1004110 and JLW Certificate Number JLWCTF3483 in effect from August 1, 2010 to August 1, 2011 with limits of $10 million in excess of coverage provided by the Basic National Union Policy[13]; and

*Second Layer Excess Policy*--Lloyd's & Partners, Ltd.'s Excess Claims Made Liability Policy No. PE1004134 and JLW Certificate Number JLWCTF3484 in effect from August 1, 2010 to August 1, 2011 with limits of $40 million in excess of the coverage provided by the First Layer Excess Policy and the National Union Primary Policy[14].

---

[12] *See also* Exhibit "B", Affidavit of Christine B. Alphonso, attesting to the correctness of the exhibits attached to this Memorandum in Support of Ironshore's Motion for Summary Judgment.
[13] Exhibit "8,"
[14] Exhibit "9."

Since the Second Layer Excess Policy is subject to all terms, clauses and conditions contained in the First Layer Excess Policy, the examination of the policy language is identical[15].

In both policies, the Insuring Agreement provides:  In consideration of the payment of premium set out in Item 7 of the Declarations, Insurers agree . . . to indemnify the "Insured" in respect of its operations anywhere in the World, for "Ultimate Net Loss" by reason of liability:

> (a)    Imposed upon the "Insured" by law or assumed by the "Insured" under an "Insured Contract", for damages in respect of:
>
>> (i)     "Bodily Injury"
>> (ii)    "Personal Injury"
>> (iii)   "Property Damage"
>> (iv)   "Advertising Injury"
>
> and/or,
>
> (b)    for costs and expenses in respect of "Removal of Wreck" either compulsory by law or assumed by the "Insured" under an "Insured Contract"
>
> caused by or arising out of an "Occurrence" that occurred on or after the Retroactive Date as set out in Item 13 of the Declarations and for which a "Claim" is first made in writing against the "Insured" during the Policy Period as set out in Item 5 of the Declarations.
>
> Nothing contained in this Policy shall make this Policy subject to the terms of any other insurance.[16]

The First Layer Excess Policy and the Second Layer Excess Policy define an "Insured" under the policies as including:

> 13(c) any person or entity to whom the "Insured" is obligated by a written "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy but only with respect to:

---

[15] Exhibit "9", Risk Details, Conditions

[16] Endorsement No. 1 to Lloyd's & Partners, Ltd.'s Excess Claims Made Liability Policy No. PE1004110, attached as Exhibit "8."

i)     liability arising out of operations conducted by the named Insured or on its behalf; or

ii)    facilities owned or used by the named "Insured";[17]

13(d) any person or organisation other than the named "Insured", included as an additional insured in the policies listed in Item 2 [the National Union Primary Policy] of the Declarations but not for broader coverage than is available to such person or organisation under such underlying policies.[18]

The First and Second Excess Policies also define "Insured Contract" as follows:

i)     in respect of any coverage provided under Insuring Agreement 1 (a): any written or agreement entered into by the "Insured" and pertaining to business under which the "Insured" assumes the tort liability of another party to pay for "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" to a "Third Party"[19] or organisation. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;[20]

******

## III.    ENDEAVOR IS AN INSURED UNDER THE FIRST LAYER EXCESS POLICY

Under the Definition of "Insured" contained in Paragraph 13(c) of the First Layer Excess Policy, Endeavor and Exxcel only have to demonstrate that Basic was obligated by an "Insured Contract"[21] to provide excess insurance coverage to protect Endeavor and Exxcel from liability arising out of operations conducted by the named Insured.

Endeavor and Exxcel are "Insured[s]" under the First Layer Excess Policy because all elements of Definition 13(c) have been met. First, it is uncontested that the MSA qualifies as an

---

[17] Exhibit "8" at Section IV – Definitions, ¶ 13(c).
[18] Exhibit "8" at Section IV – Definitions, ¶ 13(d).
[19] "Third Party" is defined as "any company, entity or human being other than an "Insured" or other subsidiary, owned or controlled company or entity of an "Insured." Notwithstanding Definition 13(e) of this Policy, an employee of an "Insured" shall be treated as a "Third Party." *See* Exhibit "8", Section IV ¶24.
[20] Exhibit "8", Endorsement No. 5.
[21] Exhibit "8", Endorsement No.5 ¶ 2.

"Insured Contract" as defined by the First Layer Excess Policy "because it [the MSA] is a written contract wherein the insured, Basic, assumed the tort liability of another (Endeavor and Exxcel) that it would not have had in the absence of the agreement."[22] Second, the contract clearly obligates Basic to obtain excess liability insurance coverage, which Basic obtained by virtue of purchasing the First Layer Excess Policy.[23] Third, Basic was required by the MSA to have the policy endorsed to name Endeavor and Exxcel as additional insureds and waive subrogation against them, and to indemnify Endeavor and Exxcel from claims involving personal injuries to and the death of Basic's employees.[24]

Significantly, the MSA provides that Basic will "protect, defend and indemnify Endeavor and Exxcel" "without limit and without regard to the cause," including the negligence of Endeavor and Exxcel.[25] Even though the parties could have limited the dollar amount of their contractual liability under the mutual indemnity obligations, no limit of liability was established by the MSA and Basic contractually assumed all liability, with the exception of gross negligence or willful misconduct, for personal injury/death of its own employees.[26]

---

[22]   Exhibit "10", Defendants' Memorandum in Support of Motion for Summary Judgment, Docket No. 25, pp. 14-15.
[23]   Exhibit "2" at ¶6.1 (d).
[24]  Exhibit "3" at ¶19; Exhibit "4" at ¶XIX.
[25]  Exhibit "2" at Paragraph 7.18 - THE LIABILITY AND INDEMNITY PROVISIONS OF THIS CONTRACT SHALL BE WITHOUT LIMIT AND SHALL INCLUDE REASONABLE ATTORNEYS' FEES AND COSTS INCURRED BY THE PARTY RECEIVING INDEMNIFICATION. ...
[26]  Endeavor and Exxcel's liability under the MSA for the death and/or personal injury of its employees was also unlimited. Both parties were entitled to obtain insurance that limited its exposure to the stated $4,000,000 liability for the excess policy. For instance, Endeavor's policy with Ironshore, which provides $10,000,000 in coverage excess of $1,000,000 primary, provides as follows:
III.    LIMITS OF INSURANCE

The parties do not dispute that the scope of the mutual indemnities contained in the MSA requires Basic to hold harmless and indemnify Endeavor and Exxcel from claims arising out of the death of Basic's employees. In fact Defendants, Aspen and Dornoch, have stipulated that the mutual indemnity provisions meet the express negligence and conspicuousness tests required under Texas law.[27] Accordingly, the sole dispute between the parties is whether the Texas Oilfield Anti-Indemnity Act (TOAIA) imposes limitations on the "Insured" status of an indemnitee even though the underlying MSA itself falls within a statutory exception to the TOAIA.

Section 127.005 of the TOAIA, entitled "Insurance Coverage," provides as follows:

(a)     This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnity subject to the limitations specified in Subsection (b) or (c).

(b)     With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee.

---

C.     Subject to Paragraph B. above, the most we will pay for **Loss** under this Policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this Policy is the lesser of the applicable Limits of Insurance shown in item 3 of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

IRONSHORE Policy, Exhibit "A" at p.3.

[27] Exhibit "10", Defendants' Memorandum in Support of Summary Judgment, page 10, citing *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). Defendants state "In the present case, both tests are met; furthermore, there is no dispute between the parties on this issue."

(c)     With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.[28]

To fall within the TOAIA exclusion under <u>Section 127.005</u>, the parties need only "agree in writing that the indemnity obligation *will be* supported by liability insurance coverage *to be* furnished by the indemnitor...." TEX. CIV. PRAC. & REM.CODE § 127.005(a) (emphasis added). The statute requires a writing to memorialize only that "each party as indemnitor has agreed to provide" insurance or self-insurance to support the indemnity obligations. *See* Tex. Civ. Prac. & Rem Code § 127.005(b). *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 351 (Tex. 2000). Once the parties execute the applicable agreement, the TOAIA exception applies. Accordingly, since Basic and Endeavor agreed to support their mutual indemnity obligations with equal amounts of insurance, the TOAIA does not void and/or otherwise limit the threshold issue in this case—whether the MSA may be considered a valid "Insured Contract" under Texas law. For this reason, Defendants do not dispute that the MSA was an enforceable "Insured Contract" as defined by the First Layer Excess Policy.[29]

Since the MSA is an "Insured Contract", Endeavor and Exxcel qualify for "Insured" status under the First Layer Excess Policy. However, Texas law dictates that the insurer's legal obligation to its Insured is determined by the contractual policy language, not by the indemnity provisions in the MSA. This issue is directly controlled by *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.32d 660 (Tex. 2008). In *ATOFINA*, the Texas Supreme Court held that, when determining the scope of a company's rights as an "additional insured" under

---

[28] TEX. CIV. PRAC. & REM. CODE §127.005.
[29] Exhibit "10", Defendants' Memorandum in Support of Motion for Summary Judgment, Docket No. 25, p. 14.

13

liability policies procured by its contractor, a court must not look "to the indemnity agreement in the service contract" but rather "to the terms of the insurance policy itself." *Id.* at 664.

The *ATOFINA* court set out to "examine the interplay between a contractual indemnity provision and a service contract's requirement to name an additional insured." *Id.* at 662. The service contract in question was entered into between ATOFINA Petrochemicals, Inc. ("ATOFINA") and a contractor, Triple S Industrial Construction ("Triple S"), which had agreed to perform maintenance and construction work at ATOFINA's Port Arthur refinery. As the Texas Supreme court explained:

> The service contract contained an indemnity provision and a requirement that Triple S carry certain minimum levels of liability insurance coverage. Triple S agreed to indemnify ATOFINA from all personal injuries and property losses sustained during the performance of the contract, "except to the extent that any such loss is attributable to the concurrent or sole negligence, misconduct or strict liability of [ATOFINA]" Triple S also agreed to carry at least $500,000 of primary comprehensive general liability (CGL) insurance "[i]ncluding coverage for contractual liability insuring the indemnity agreement," and an excess or "umbrella" liability policy "following form for [the CGL]" of at least $500,000. Finally, the contract required Triple S to furnish certificates of insurance to ATOFINA evidencing the required insurance coverages and showing ATOFINA as an additional insured on the policies.

*Id.* at 662-63.

Triple S complied with its contractual obligations by purchasing a $1 million primary CGL policy from Admiral Insurance Company ("Admiral") and a $9 million umbrella policy from Evanston Insurance Company ("Evanston")—i.e., 10 times the minimum level of coverage that it was committed to provide in the service contract—and by furnishing the required certificates of insurance. *Id.* at 663. During the policy period, a Triple S employee working at the ATOFINA facility died on the job when he drowned, after falling through the corroded roof of a fuel-oil storage tank. The Triple S employee's survivors then sued both Triple S and ATOFINA

for wrongful death, and after Admiral tendered its full policy limits to fund the first $1 million of the $6.75 million settlement, ATOFINA demanded coverage from Evanston as an "additional insured" under Evanston's umbrella policy. *Id.* However, Evanston denied ATOFINA's claim.

In refusing ATOFINA's "additional insured" claim, Evanston made materially the same argument that the Defendants have pled in their Answer here. Evanston noted that, in the service contract between ATOFINA and Triple S, ATOFINA disclaimed indemnification from Triple S for losses resulting from ATOFINA's own negligence. There, Evanston noted that the indemnity obligations contained in the service contract were limited and requested that the Texas Supreme Court recognize this limitation when interpreting the scope of coverage under the excess insurance contract. Here, Aspen points to TOAIA, even though the MSA falls within an exception to the TOIA, and seeks to engraft an extra-contractual limitation on Insured status of Endeavor and Exxcel that simply does not exist in the insurance contract.

Under the Texas Supreme Court's rational in *ATOFINA*, however, the Court need not look to alleged limitations on the indemnity agreement because Ironshore does not seek a declaration of the rights and obligations between Endeavor, Exxcel and Basic under the MSA. Rather, Ironshore seeks a declaration of Endeavor and Exxcel's coverage rights as "Insured[s]" under the First Excess Layer Policy since all parties agree that the pre-requisites for being considered an "Insured" under the Policy's definitions under 13(c) have been met. Accordingly, as Insureds, unless the First Layer Excess Policy restricts the limits of liability available to Endeavor and Exxcel under the First Layer Excess Policy, which it does not, Endeavor and Exxcel are entitled to the full policy limits provided by the First Layer Excess Policy. Moreover, the $10 million limit of liability provided by the First Layer Excess Policy, by the terms of the

Ironshore insurance contract, is considered "Other Insurance" and is excess to the coverage provided to Endeavor and Exxcel under the Ironshore policy.

## IV.     ENDEAVOR IS AN INSURED UNDER THE SECOND LAYER EXCESS POLICY

Because the Second Layer Excess Policy is subject to all terms, clauses and conditions of the First Layer Excess Policy, Endeavor and Exxcel are also an "Insured" under the Second Layer Excess Policy and are therefore entitled to coverage up to the $40 million limit of liability provided by the policy[30]. Significantly, just like the First Layer Excess Policy, the Second Layer Excess Policy's terms and conditions do not in any way limit or restrict the amount of coverage available to Endeavor and Exxcel, nor do they restrict or lessen in any way the limit of liability available to Endeavor and Exxcel under the Second Layer Excess Policy once Endeavor and Exxcel qualify as an Insured under the policy.

Under Texas law, courts are required to resolve any reasonable doubt in favor of the insured when interpreting an insurance policy. "[I]f a contract of insurance is susceptible of more than one reasonable interpretation, a court must resolve the uncertainty by adopting the construction that most favors the insured." *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

Although Definition 13(c) of the First Layer Excess Policy makes Endeavor and Exxcel Insureds under both excess policies, Endeavor and Exxcel are also "Insured[s]" under the definition of "Insured" provided by Section 13(d) of the First and Second Layer Excess policies. Specifically, Endeavor and Exxcel are also an "Insured" under both excess policies because the

---

[30]Exhibit "9", Risk Details, Conditions

16

sole qualifying factor for inclusion as an "Insured" under Section 13(d) is that Endeavor and Exxcel are considered "additional insureds" under the National Union Primary Policy.[31] In this regard, Paragraph 13(d) of the First and Second Layer Excess Policy provides that "Insured" includes:

> [A]ny person or organization other than the named "Insured", included as an additional insured in the policies listed in Item 2 [the National Union policy] of the Declarations but not for broader coverage than is available to such person or organisation under such underlying policies.

Under the broad interpretation of coverage Texas law requires, Endeavor and Exxcel may invoke either Definition 13(c) or 13(d). *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008). Accordingly, to the extent any limitation is imposed on Endeavor and Exxcel's status as an Insured under the Second Layer Excess Policy under Definition 13(c), which is denied, Definition 13(d) eliminates the restriction and allows for Endeavor and Exxcel to be an "Insured" under the Second Layer Excess Policy.

## CONCLUSION

The material facts are not in dispute. Endeavor and Exxcel are "Insured[s]" under the First and Second Layer Excess policies. The TOAIA does not provide for alteration or modification of insurance policies and nothing in the contractual language contained in the First and Second Layer Excess policies provides for a dollar amount limitation. Accordingly, Ironshore's Motion for Summary Judgment should be granted and the court should make the following judicial declarations:

- Endeavor and Exxcel are Insureds under the First Layer Excess Policy issued by Defendant, Aspen;

---

[31] Exhibit "11", National Union Primary Policy No. 194-99-10, Declarations Page, Item 2.

- Endeavor and Exxcel are Insureds under the Second Layer Excess Policy issued by Defendant, Dornoch;

- The First Layer Excess Policy provides $10 million of liability insurance coverage to Endeavor and Exxcel for satisfaction of the claims arising out of the deaths Abel Garcia and Fernando Zamora; and

- The Second Layer Excess Policy provides $40 million of liability insurance coverage to Endeavor and Exxcel for satisfaction of the claims arising out of the deaths Abel Garcia and Fernando Zamora.

Respectfully submitted,


s/Randell E. Treadaway
RANDELL E. TREADAWAY, T.A. (#1624)
CHRISTINE B. ALPHONSO (#30861)
226 East Gibson Street
Covington, LA 70433
Telephone: (504) 833-7300
Telefax: (985) 871-8788
E-mail: randy@ztlalaw.com
       christine@ztlalaw.com
*Attorneys for Ironshore Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all counsel of record by ECF, e-mail and/or by placing same in the U. S. Mail, postage prepaid, this 7th day of December, 2012.

s/Randell E. Treadaway