# EXHIBIT "2"

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 2 of 12

Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 2 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 2 of 12

# MASTER SERVICE AGREEMENT

THIS AGREEMENT CONTAINS PROVISIONS RELATING TO
INDEMNITY, RELEASE OF LIABILITY, AND ALLOCATION OF RISK

THIS MASTER SERVICE AGREEMENT (the "Contract") made and entered into June 18, 2009, by and between the parties herein designated as "Operator" and "Contractor".

Operator:

ENDEAVOR ENERGY RESOURCES, L.P.,  Endeavor affiliates, including but not limited to the
its d/b/a's, subsidiaries and/or its affiliates  following companies:
   110 N. Marienfeld, Suite 200        Acme Energy Services, Inc., it's d/b/a's, subsidiaries
   Midland, TX 79701                  and/or affiliates
   Phone: 432-687-1575              Blue Streak Transportation, Inc.
   Fax:    432-682-3088              Oasis Transportation and Marketing, Inc.
                                         Exxcel Well Services, Inc.
                                         Natural Gas Gatherers, Ltd.
                                         NGG Gathering Company, LLC
                                         Barnett Gathering Company, LLC
                                         Advanced Stimulation Technologies, Inc.
                                         LCX Energy, LLC

Contractor:
Basic Energy Services, L.P.
PO Box 10460
Midland, TX 79707
Phone: 432-620-5500
Fax:   432-620-5501

WITNESSETH: THAT,

WHEREAS, Operator is engaged in the business of drilling oil and gas wells or is engaged in the production of oil and gas, and in the course of such operations regularly and customarily enters into contracts with independent contractors for the performance of service relating thereto; and

WHEREAS, Contractor represents that it has adequate equipment in good working order and fully trained personnel capable of efficiently operating such equipment and performing services for Operator.

NOW THEREFORE IN CONSIDERATION of the mutual promises, conditions and agreements herein contained, the sufficiency of which is hereby acknowledged, and the specifications and special provisions set forth in any exhibits attached and hereby incorporated, the parties mutually agree as follows:

1.0    NATURE AND TERM OF AGREEMENT

    1.1    This Contract shall remain in force and effect until canceled by either party by giving the other party ten (10) days notice in writing at the respective address of said party. If current work extends past ten (10) days, then cancellation shall not be effective until work is completed and payments for completed work have been made. All indemnity provisions shall survive termination. At any time and from time to time during the term of this Contract, when Operator desires work to be performed by Contractor, a representative of the Operator shall give Contractor a request for such work. The request ("Work Order") may be in the form of a Work Order, purchase order, letter, memorandum or other document or may be oral. Upon acceptance of any such Work Order, Contractor shall thereafter commence the performance of the work in accordance with the terms of the Work Order and this Contract. This Contract shall control and

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 3 of 12

Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 3 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 3 of 12

govern all work performed by Contractor under Work Orders, either oral or written. Notwithstanding the foregoing, any requested oral work order shall be confirmed in writing within three (3) business days by Contractor. Agreements or stipulations in any such Work Order not in conformity with the terms and provisions hereof shall be null and void. No waiver of any terms, provisions or conditions hereof shall be effective unless in writing and signed by an authorized officer of Operator and Contractor. Nothing herein shall be construed to obligate Operator to order work from Contractor or obligate Contractor to accept work from Operator.

1.2   Operator may, at any time, in its sole discretion terminate work covered by any Work Order, oral or written, issued hereunder, in which event Contractor shall be paid, at the applicable rates stipulated in Contractor's Rate Schedule, Hourly Well Service Work Order, or Bid, for services rendered up to and including the date of such termination. Unless otherwise agreed to by Contractor and Operator in writing, in no event shall Contractor be entitled to be paid prospectively for work unperformed by reason of such termination, nor shall Contractor be entitled to any other compensation or damages for loss of anticipated profits or otherwise. On notice of such termination, Contractor shall promptly remove its personnel, machinery, and equipment from the location and shall further cooperate with Operator or its designee to ensure an orderly and expeditious transition and completion of the work.

## 2.0 LABOR, EQUIPMENT, MATERIALS, SUPPLIES AND SERVICES

2.1   When agreement is reached, either orally or by written Work Order, for the services and/or equipment desired or when work is commenced, Contractor shall commence furnishing same at the agreed upon time, and continue such operations diligently and without delay, in conformity with the specifications and requirements contained herein and in such Work Orders.

2.2   All work or services rendered or performed by Contractor shall be done with due diligence, in a good and workmanlike manner, using skilled, competent and experienced workmen and supervisors and in accordance with good oilfield servicing practices. All materials, equipment, supplies or manufactured articles furnished by Contractor in the performance of the work or services shall be selected and used with good oilfield practice for their respective purposes and shall be free from defects and in compliance with Operator's specifications provided to Contractor. Any portion of the materials or work found defective or unsuitable shall be removed, replaced or corrected by Contractor without additional cost or risk to Operator. Contractor agrees to visually inspect all materials and equipment furnished by Operator and shall notify Operator of any apparent defects therein before using such materials and equipment. Contractor shall not be liable for claims due to latent defects.

2.3   Contractor does not warrant the accuracy of log data, including but not limited to the accuracy of log data transmitted by electronic process, and Contractor shall have no liability for the accidental or intentional interception of such data by third parties. In making any interpretation of logs, Contractor's personnel will give Operator the benefit of their judgment as to the correct interpretation, however, Contractor disclaims any warranty or guarantee of interpretations of data provided by Contractor's personnel; these are opinions only and Operator assumes full responsibility for the use of such opinions. Under no circumstances should any interpretation or recommendation of Contractor's personnel be relied upon as any part of the basis for any drilling, completion, well treatment or production decision or any procedure including any risk to the safety of any drilling venture, drilling contractor or its crew or any other individual.

2.4   EXCEPT AS IS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE TERMS OF THE CONTRACT, CONTRACTOR MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), REGARDING THE EQUIPMENT, GOODS AND SERVICES CONTRACTOR FURNISHES HEREUNDER. NOTHWITHSTANDING THE FOREGOING, TO THE EXTENT THAT IT CAN DO SO, CONTRACTOR ASSIGNS TO OPERATOR ALL WARRANTIES PREVIOUSLY GIVEN TO CONTRACTOR IN CONNECTION WITH ALL EQUIPMENT AND PRODUCTS INSTALLED BY CONTRACTOR.

## 3.0 PAYMENT

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 4 of 12
Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 4 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 4 of 12

3.1 The Operator shall pay Contractor for the work and/or equipment or materials furnished by Contractor agreed upon rate at the time of service or at the rate set forth in Contractor's work ticket.

3.2 All invoices submitted to Operator are payable immediately upon receipt. Any amounts that remain outstanding after 30 days shall accrue interest at the rate of 1.0% per month or at the maximum rate permitted by applicable law, whichever is lower. In the event any amounts remain outstanding for 45 days or more, Contractor shall have the right to terminate this Contract upon seven (7) days written notice. In the event Operator, in good faith, disputes the amount of any invoice, it shall notify Contractor of such dispute within 5 days of receipt of the invoice and shall pay any undisputed amount of the invoice within said 30 day period.

### 4.0 REPORTS TO BE FURNISHED BY CONTRACTOR

4.1 The quantity, description and condition of the materials and supplies and/or services furnished shall be monitored and checked by Contractor, and all delivery tickets shall be acknowledged as to receipt by Contractor's representative. Contractor must obtain approval of Operator's representative by furnishing delivery tickets for materials and supplies for which Contractor is to be reimbursed by Operator.

4.2 Contractor shall orally report to Operator, as soon as practicable, followed by an appropriate written report, all accidents or occurrences resulting in death or injuries to Contractor's employees, Operator's employees, or third parties, damage to property of Operator or physical damage to Contractor's property or third parties, arising out of or during the course of work to be performed. Contractor shall furnish Operator with a copy of all non-privileged reports made by Contractor to Contractor's insurer, governmental authorities, or to others of such accidents and occurrences.

### 5.0 INDEPENDENT CONTRACTOR RELATIONSHIP

5.1 In the performance of any work by Contractor for Operator, Contractor shall be deemed to be an independent contractor, with the authority and right to direct and control all of the details of the work, Operator being interested only in the results obtained. However, all work contemplated shall meet the approval of Operator and shall be subject to a general right of inspection. Operator shall have no right or authority to supervise or give instructions to the employees, agents, or representative of Contractor, but such employees, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. It is the understanding and intention of the parties hereto that no relationship of master and servant, principal and agent or employer and employee shall exist between Operator and Contractor, its employees, agents, or representatives.

### 6.0 INSURANCE

6.1 To support the indemnification provisions in this Contract but as a separate and independent obligation, each party shall at each party's own expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the amounts as follows:

(a) Workers' Compensation Insurance complying with applicable state laws and Employers' Liability Insurance in the amount of $1,000,000 covering each party's own employees working under this Contract.

(b) Commercial (or Comprehensive) General Liability Insurance, including contractual obligations covered in this Contract and proper coverage for all other obligations assumed in this Contract., in the amount of $1,000,000 combined single limit per occurrence for Bodily Injury and Property Damage.

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 5 of 12

Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 5 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 5 of 12

(c) Automobile Liability Insurance with Bodily Injury in the amount of $1,000,000 for each person and $1,000,000 for each accident; and Property Damage in the amount of $1,000,000 for each accident or $1,000,000 combined single limit for Bodily Injury and Property Damage.

(d) Excess Liability Insurance over that required in Paragraph 6.1 (a), (b), and (c) in the amount of $4,000,000, specifically including Contractual Liability.

6.2 Operator and Contractor shall cause their respective underwriters and insurers to waive all rights of subrogation against the other party, and its respective underwriters and insurers, but only to the extent of the liability assumed in this Contract.

6.3 All required insurance shall be maintained in full force and effect during the term of this Contract, and shall not be canceled, altered, or amended without thirty (30) days prior written notice to Operator. Operator and Contractor shall cause their respective underwriters and insurers to name the other as an additional insured (except Workers' Compensation or any Physical Damage (Property) coverage) but only to the extent of the liability assumed in this Contract and only to the extent of the terms and conditions of such insurance. To the extent of the mutual indemnification obligations assumed, all such insurance shall be primary to any insurance of the Indemnitee that may apply to any occurrence, accident, or claim. Contractor and Operator agree to have its insurance carrier furnish the other a certificate or certificates evidencing insurance coverage in accordance with the above requirements within fourteen (14) days of the commencement of work hereunder.

7.0 RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK

7.1 CONTRACTOR SHALL RELEASE OPERATOR FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND AND INDEMNIFY OPERATOR, CONSULTANTS, SUBSIDIARIES, AND AFFILIATES AND ALL OFFICERS, DIRECTORS, EMPLOYEES, AND JOINT OWNERS OF EACH FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, ARISING IN CONNECTION HEREWITH IN FAVOR OF CONTRACTOR'S EMPLOYEES, ITS SUBCONTRACTORS AND THEIR EMPLOYEES, AND CONTRACTOR'S INVITEES ON ACCOUNT OF BODILY INJURY, DEATH, OR DAMAGE TO PROPERTY. CONTRACTOR'S INDEMNITY UNDER THIS CONTRACT SHALL BE WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY OPERATOR.

7.2 OPERATOR SHALL RELEASE CONTRACTOR FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR, CONSULTANTS, SUBSIDIARIES, AND AFFILIATES AND ALL OFFICERS, DIRECTORS, EMPLOYEES, AND JOINT OWNERS OF EACH FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, ARISING IN CONNECTION HEREWITH IN FAVOR OF OPERATOR'S EMPLOYEES, ITS OTHER CONTRACTORS AND SUBCONTRACTORS AND THEIR EMPLOYEES, AND OPERATOR'S INVITEES ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO PROPERTY. OPERATOR'S INDEMNITY UNDER THIS CONTRACT SHALL BE WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY CONTRACTOR.

7.3 EXCEPT AS MAY BE OTHERWISE PROVIDED IN THIS CONTRACT EACH PARTY SHALL NOTIFY THE OTHER PARTY IMMEDIATELY OF ANY CLAIM, DEMAND, OR SUIT THAT MAY BE PRESENTED TO OR SERVED UPON IT BY ANY PARTY ARISING OUT OF OR AS A RESULT OF WORK PERFORMED UNDER THIS CONTRACT AFFORDING SUCH OTHER PARTY FULL OPPORTUNITY TO ASSUME THE DEFENSE OF SUCH CLAIM, DEMAND, OR SUIT AND TO PROTECT ITSELF ACCORDING TO THIS ARTICLE.

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 6 of 12
Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 6 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 6 of 12

7.4 NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT OR BUSINESS INTERRUPTIONS INCLUDING LOSS OR DELAY OF PRODUCTION, HOWEVER CAUSED.

7.5 CONTRACTOR'S SURFACE EQUIPMENT: CONTRACTOR SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF CONTRACTOR'S SURFACE EQUIPMENT WHICH OCCURS ABOVE THE SURFACE, REGARDLESS OF WHEN OR HOW SUCH DAMAGE OCCURS, AND CONTRACTOR SHALL RELEASE OPERATOR OF ANY LIABILITY FOR ANY SUCH LOSS, EXCEPT LOSS OR DAMAGE UNDER THE PROVISIONS OF SUBPARAGRAPH 7.6, 7.7, 7.8 AND 7.9.

7.6 CONTRACTOR'S IN-HOLE EQUIPMENT: OPERATOR SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF CONTRACTOR'S IN-HOLE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, DRILL PIPE, DRILL COLLARS, AND TOOL JOINTS, AND OPERATOR SHALL PAY CONTRACTOR FOR THE VALUE OF ANY SUCH LOSS OR DAMAGE; THE VALUE TO BE DETERMINED BY AGREEMENT BETWEEN CONTRACTOR AND OPERATOR AS CURRENT REPAIR COSTS, IF REPAIR IS POSSIBLE THE DEPRECIATED COST OF SUCH EQUIPMENT DELIVERED TO THE WELL SITE. SUCH DEPRECIATION COST SHALL NOT EXCEED 50% OF THE COST OF NEW REPLACEMENT EQUIPMENT.

7.7 CONTRACTOR'S EQUIPMENT – ENVIRONMENTAL LOSS OR DAMAGE: NOTWITHSTANDING THE PROVISIONS OF SUBPARAGRAPH 7.5 ABOVE BUT SUBJECT TO SUBPARAGRAPH 2.2 ABOVE, OPERATOR SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF CONTRACTOR'S EQUIPMENT CAUSED BY EXPOSURE TO HIGHLY CORROSIVE OR OTHERWISE DESTRUCTIVE ELEMENTS, INCLUDING THOSE INTRODUCED INTO THE DRILLING FLUID. HIGHLY CORROSIVE OR OTHERWISE DESTRUCTIVE ELEMENTS SHALL INCLUDE ANY OF A VARIETY OF COMPLEX CHEMICAL OR ELECTROCHEMICAL PROCESSES BY WHICH MATERIALS ARE DESTROYED THROUGH REACTION WITH ITS ENVIRONMENT.

7.8 RENTAL EQUIPMENT - IN THE EVENT THAT OPERATOR RENTS EQUIPMENT FROM CONTRACTOR THAT DOES NOT INCLUDE ANY OF CONTRACTOR'S PERSONNEL TO OPERATE, OPERATOR WILL UPON DELIVERY BY CONTRACTOR TO OPERATOR'S LOCATION OR PICK UP BY OPERATOR (AS APPLICABLE, HEREIN CALLED "DELIVERY") AND CONTINUING UNTIL SUCH TIME AS THE EQUIPMENT IS RETURNED TO CONTRACTOR'S YARD OR PICKED UP BY CONTRACTOR AT OPERATOR'S LOCATION (AS APPLICABLE, HEREIN CALLED "RETURN"), SUCH EQUIPMENT SHALL BE DEEMED TO BE IN THE CARE, CUSTODY AND CONTROL OF OPERATOR. RISK OF LOSS OF OR DAMAGE TO SUCH EQUIPMENT SHALL PASS TO OPERATOR UPON ITS DELIVERY AND SHALL REMAIN WITH OPERATOR UNTIL ITS RETURN. DURING THIS PERIOD, OPERATOR SHALL ASSUME ALL OBLIGATIONS AND LIABILITY CONCERNING THE EQUIPMENT, AND FOR ITS SAFE USE, MAINTENANCE, OPERATION, CONDITION, AND STORAGE, INCLUDING WITHOUT LIMITATION, LIABILITY (A) FOR THE LOSS, THEFT, DESTRUCTION OR DAMAGE TO THE EQUIPMENT (OR ANY PART THEREOF) AND (B) FOR ALL OTHER RISKS AND LIABILITIES, INCLUDING WITHOUT LIMITATION, THE DEATH OF OR INJURY TO ANY PERSON OR PROPERTY OF OPERATOR OR ANOTHER, ARISING FROM THE USE, OPERATION, CONDITION, POSSESSION, OR STORAGE OF THE EQUIPMENT FROM ANY CAUSE WHATSOEVER. OPERATOR SHALL PAY CONTRACTOR AT THE REPLACEMENT VALUE OF NEW EQUIPMENT OF LIKE QUALITY FOR ANY EQUIPMENT WHICH IS LOST, STOLEN, DESTROYED OR DAMAGED.

7.9 SOUND LOCATION: OPERATOR SHALL PREPARE A SOUND LOCATION ADEQUATE IN SIZE AND CAPABLE OF PROPERLY SUPPORTING CONTRACTOR'S EQUIPMENT, AND SHALL BE RESPONSIBLE FOR A CONDUCTOR PIPE PROGRAM ADEQUATE TO PREVENT SOIL AND SUBSOIL WASH OUT. IT IS RECOGNIZED THAT OPERATOR HAS SUPERIOR KNOWLEDGE OF THE LOCATION AND ACCESS ROUTES TO THE LOCATION, AND MUST ADVISE CONTRACTOR OF ANY SUBSURFACE CONDITIONS, OR

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 7 of 12

Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 7 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 7 of 12

OBSTRUCTIONS (INCLUDING, BUT NOT LIMITED TO, MINES, CAVERNS, SINK HOLES, STREAMS, PIPELINES, POWER LINES AND TELEPHONE LINES) WHICH CONTRACTOR MIGHT ENCOUNTER WHILE EN ROUTE TO THE LOCATION OR DURING OPERATIONS HEREUNDER. IN THE EVENT SUBSURFACE CONDITIONS CAUSE A CRATERING OR SHIFTING OF THE LOCATION SURFACE, OR IF SEABED CONDITIONS PROVE UNSATISFACTORY TO PROPERLY SUPPORT THE RIG DURING MARINE OPERATIONS HEREUNDER, AND LOSS OR DAMAGE TO THE RIG OR ITS ASSOCIATED EQUIPMENT RESULTING THEREFROM, OPERATOR SHALL, WITHOUT REGARD TO OTHER PROVISIONS OF THIS CONTRACT, INCLUDING SUBPARAGRAPH 7.5 HEREOF, PAY CONTRACTOR FOR ALL SUCH LOSS OR DAMAGE INCLUDING PAYMENT OF DEDUCTIBLE AND PAYMENT OF FORCE MAJEURE RATE DURING REPAIR AND/OR DEMOBILIZATION IF APPLICABLE.

7.10 OPERATOR'S EQUIPMENT: OPERATOR SHALL ASSUME LIABILITY AT ALL TIMES FOR DAMAGE TO OR DESTRUCTION OF OPERATOR'S EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, CASING, TUBING, WELL HEAD EQUIPMENT, AND PLATFORM IF APPLICABLE, REGARDLESS OF WHEN OR HOW SUCH DAMAGE OR DESTRUCTION OCCURS, AND OPERATOR SHALL RELEASE CONTRACTOR FROM ANY LIABILITY OF ANY SUCH LOSS OR DAMAGE.

7.11 THE HOLE: IN THE EVENT THE HOLE IS LOST OR DAMAGED, OPERATOR SHALL BE SOLELY RESPONSIBLE FOR SUCH DAMAGE TO OR LOSS OF THE HOLE, INCLUDING THE CASING THEREIN. OPERATOR SHALL RELEASE CONTRACTOR OF ANY LIABILITY FOR DAMAGE TO OR LOSS OF THE HOLE, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITY, AND EXPENSE RELATING TO SUCH DAMAGE TO OR LOSS OF THE HOLE.

7.12 UNDERGROUND DAMAGE: OPERATOR SHALL RELEASE CONTRACTOR FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITY, AND EXPENSE RESULTING FROM OPERATIONS UNDER THIS CONTRACT ON ACCOUNT OF INJURY TO, DESTRUCTION OF, OR LOSS OR IMPAIRMENT OF ANY PROPERTY RIGHT IN OR TO OIL, GAS, OR OTHER MINERAL SUBSTANCE OR WATER, IF AT THE TIME OF THE ACT OR OMISSION CAUSING SUCH INJURY, DESTRUCTION, LOSS, OR IMPAIRMENT, SAID SUBSTANCE HAD NOT BEEN REDUCED TO PHYSICAL POSSESSION ABOVE THE SURFACE OF THE EARTH, AND FOR ANY LOSS OR DAMAGE TO ANY FORMATION, STRATA, OR RESERVOIR BENEATH THE SURFACE OF THE EARTH.

7.13 RADIOACTIVE SOURCES: OPERATOR SHALL AT ITS RISK AND EXPENSE ATTEMPT TO RECOVER ANY CONTRACTOR GROUP (AS SUCH TERM IS HEREINAFTER DEFINED) EQUIPMENT LOST OR LODGED IN A WELL. IF A RADIOACTIVE SOURCE BECOMES LOST OR LODGED IN A WELL, OPERATOR SHALL MEET ALL REQUIREMENTS OF SECTION 39.15(A) OF THE NUCLEAR REGULATORY COMMISSION REGULATIONS AND ANY OTHER APPLICABLE STATE OR FEDERAL LAWS OR REGULATIONS CONCERNING RETRIEVAL OR ABANDONMENT, INCLUDING WITHOUT LIMITATION REGULATIONS OF THE NUCLEAR REGULATORY COMMISSION. OPERATOR SHALL PERMIT CONTRACTOR TO MONITOR THE RECOVERY OR ABANDONMENT EFFORTS ALL AT NO RISK OR LIABILITY TO CONTRACTOR. NOTWITHSTANDING ANY INDEMNITY REGARDING CONTRACTOR'S PROPERTY, AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING THE NEGLIGENCE (SOLE, CONCURRENT, ACTIVE, OR PASSIVE), STRICT LIABILITY OR OTHER LEGAL FAULT OF CONTRACTOR GROUP, (I) OPERATOR SHALL BE RESPONSIBLE, AND SHALL INDEMNIFY AND DEFEND CONTRACTOR FOR, DAMAGES TO OR LOSS OF CONTRACTOR GROUP'S EQUIPMENT, PRODUCTS, AND MATERIALS WHILE IN TRANSIT ABOARD OPERATOR-SUPPLIED TRANSPORTATION, EVEN IF SUCH IS ARRANGED BY CONTRACTOR AT OPERATOR'S REQUEST, AND DURING LOADING AND UNLOADING FROM SUCH TRANSPORT AND (II) OPERATOR WILL ALSO PAY FOR THE CURRENT REPAIR COSTS, IF REPAIR IS POSSIBLE, OR CURRENT NEW REPLACEMENT COST OF SUCH EQUIPMENT DELIVERED TO THE WELL SITE, IF REPAIR IS NOT POSSIBLE, OF CONTRACTOR GROUP'S EQUIPMENT DAMAGED BY

Case 7:12-cv-00033-JRN Document 34-5 Filed 12/07/12 Page 8 of 12

Case 7:12-cv-00033-RAJ Document 25-1 Filed 09/14/12 Page 8 of 12
Case 7:12-cv-00033-RAJ Document 21-10 Filed 06/19/12 Page 8 of 12

CORROSION OR ABRASION DUE TO WELL EFFLUENTS. AS USED IN THIS PARAGRAPH 7.13, THE TERM "CONTRACTOR GROUP" MEANS CONTRACTOR, ITS AFFILIATES, ITS AND THEIR CONTRACTORS AND SUBCONTRACTORS OF ANY TIER AND INVITEES, AND ITS AND THEIR RESPECTIVE AFFILIATES, SHAREHOLDERS, MEMBERS, MANAGERS, OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES AND SERVANTS.

7.14 INSPECTION OF MATERIALS FURNISHED BY OPERATOR: CONTRACTOR AGREES TO VISUALLY INSPECT ALL MATERIALS FURNISHED BY OPERATOR BEFORE USING SAME AND TO NOTIFY OPERATOR OF ANY APPARENT DEFECTS. CONTRACTOR SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE RESULTING FROM THE USE OF MATERIALS FURNISHED BY OPERATOR, AND OPERATOR SHALL RELEASE CONTRACTOR FROM, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR FROM AND AGAINST ANY SUCH LIABILITY.

7.15 LIABILITY FOR WILD WELL: OPERATOR SHALL BE LIABLE FOR THE COST OF REGAINING CONTROL OF ANY WILD WELL, AS WELL AS FOR COST OF REMOVAL OF ANY DEBRIS, AND SHALL RELEASE CONTRACTOR FROM AND OPERATOR SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR FROM AND AGAINST ANY LIABILITY FOR SUCH COST.

7.16 POLLUTION AND CONTAMINATION: NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS CONTRACT IT IS UNDERSTOOD AND AGREED BY AND BETWEEN CONTRACTOR AND OPERATOR THAT THE RESPONSIBILITY FOR POLLUTION AND CONTAMINATION SHALL BE AS FOLLOWS:

(A) UNLESS OTHERWISE PROVIDED HEREIN, CONTRACTOR SHALL ASSUME ALL RESPONSIBILITY FOR, INCLUDING CONTROL AND REMOVAL OF, AND SHALL PROTECT, DEFEND AND INDEMNIFY OPERATOR FROM AND AGAINST ALL CLAIMS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER ARISING FROM POLLUTION OR CONTAMINATION, WHICH ORIGINATES ABOVE THE SURFACE OF THE LAND OR WATER FROM SPILLS OF FUELS, LUBRICANTS, MOTOR OILS, PIPE DOPE, PAINTS, SOLVENTS, BALLAST, BILGE, AND GARBAGE, EXCEPT UNAVOIDABLE POLLUTION FROM RESERVE PITS, WHOLLY IN CONTRACTORS POSSESSION AND CONTROL AND DIRECTLY ASSOCIATED WITH CONTRACTOR'S EQUIPMENT AND FACILITIES.

(B) OPERATOR SHALL ASSUME ALL RESPONSIBILITY FOR, INCLUDING CONTROL AND REMOVAL OF, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER ARISING DIRECTLY OR INDIRECTLY FROM ALL OTHER POLLUTION OR CONTAMINATION WHICH MAY OCCUR DURING THE CONDUCT OF OPERATIONS, INCLUDING, BUT NOT LIMITED TO, THAT WHICH MAY RESULT FROM FIRE, BLOWOUT, CRATERING, SEEPAGE OR ANY OTHER UNCONTROLLED FLOW OF OIL, GAS, WATER OR OTHER SUBSTANCE, AS WELL AS THE USE OR DISPOSITION OF ALL DRILLING FLUIDS, INCLUDING, BUT NOT LIMITED TO, OIL EMULSION, OIL BASE OR CHEMICALLY TREATED DRILLING FLUIDS, CONTAMINATED CUTTINGS OR CARVINGS, LOST CIRCULATION AND FISH RECOVERY MATERIALS AND FLUIDS.

(C) IN THE EVENT A THIRD PARTY COMMITS AN ACT OR OMISSION WHICH RESULTS IN POLLUTION OR CONTAMINATION FOR WHICH EITHER CONTRACTOR OR OPERATOR, FOR WHOM SUCH PARTY IS PERFORMING WORK, IS HELD TO BE LEGALLY LIABLE, THE RESPONSIBILITY THEREFOR SHALL BE CONSIDERED, AS BETWEEN CONTRACTOR AND OPERATOR, TO BE THE SAME AS IF THE PARTY FOR WHOM THE WORK WAS PERFORMED HAD PERFORMED THE SAME AND ALL OF THE OBLIGATIONS RESPECTING PROTECTION, DEFENSE, INDEMNITY AND LIMITATION OF RESPONSIBILITY AND LIABILITY, AS SET FORTH IN (A) AND (B) ABOVE, SHALL BE APPLIED.

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 9 of 12
Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 9 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 9 of 12

7.17 TERMINATION OF LOCATION LIABILITY: WHEN CONTRACTOR HAS COMPLIED WITH ALL OBLIGATIONS OF THE CONTRACT REGARDING RESTORATION OF OPERATOR'S LOCATION, OPERATOR SHALL THEREAFTER BE LIABLE FOR DAMAGE TO PROPERTY, PERSONAL INJURY OR DEATH OF ANY PERSON WHICH OCCURS AS A RESULT OF CONDITIONS OF THE LOCATION AND CONTRACTOR SHALL BE RELIEVED OF SUCH LIABILITY; PROVIDED, HOWEVER, IF CONTRACTOR SHALL SUBSEQUENTLY REENTER UPON THE LOCATION FOR ANY REASON, INCLUDING REMOVAL OF THE RIG, ANY TERM OF THE CONTRACT RELATING TO SUCH REENTRY ACTIVITY SHALL BECOME APPLICABLE DURING SUCH PERIOD.

7.18 THE LIABILITY AND INDEMNITY PROVISIONS OF THIS CONTRACT SHALL BE WITHOUT LIMIT AND SHALL INCLUDE REASONABLE ATTORNEYS' FEES AND COSTS INCURRED BY THE PARTY RECEIVING INDEMNIFICATION. THE INDEMNITOR SHALL HAVE THE RIGHT AND DUTY TO PROVIDE A DEFENSE TO THE INDEMNITEE AT THE INDEMNITOR'S OWN EXPENSE, AND THROUGH COUNSEL OF INDEMNITOR'S OWN CHOOSING, FOR ANY CLAIM MADE OR SUIT BROUGHT TO WHICH THESE INDEMNITY PROVISIONS APPLY. THE INDEMNITOR MAY INVESTIGATE AND SETTLE ANY CLAIM OR SUIT UP TO AND INCLUDING THE AMOUNT OF THE INDEMNITOR'S OBLIGATION PURSUANT TO THIS INDEMNITY AGREEMENT AT THE INDEMNITOR'S SOLE DISCRETION. IN ADDITION, REASONABLE ATTORNEY'S FEES AND COSTS INCURRED SHALL BE RECOVERABLE BY THE PREVAILING PARTY IN ANY ACTION TO ENFORCE THE INDEMNIFICATION AGREEMENT. HOWEVER, IT IS UNDERSTOOD AND AGREED THAT ANY PUNITIVE DAMAGE AWARD SHALL NOT BE SUBJECT TO THIS CONTRACT. ANY PUNITIVE DAMAGE AWARD SHALL BE THE SOLE AND EXCLUSIVE OBLIGATION OF THE PARTY AGAINST WHOM THE AWARD IS ISSUED.

7.19 EXCEPT AS OTHERWISE EXPRESSLY LIMITED BY THIS CONTRACT, IT IS THE INTENT OF PARTIES THAT ALL INDEMNITY OBLIGATIONS AND LIABILITIES ASSUMED BY SUCH PARTIES UNDER TERMS OF THIS CONTRACT, INCLUDING WITHOUT LIMITATION, PARAGRAPHS 7.1 THROUGH 7.18, BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF (INCLUDING PREEXISTING CONDITIONS), THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, STRICT LIABILITY, OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT; OR ACTIVE OR PASSIVE. THE INDEMNITIES, RELEASES AND ASSUMPTIONS OF LIABILITY EXTENDED BY THE PARTIES UNDER THE PROVISIONS OF ARTICLE 7 SHALL INURE TO THE BENEFIT OF THE PARTIES, THEIR PARENT, HOLDING AND AFFILIATED COMPANIES AND THEIR RESPECTIVE OFFICERS, DIRECTORS AND EMPLOYEES.

7.20 <u>NOTWITHSTANDING ANY OTHER PROVISION IN THIS CONTRACT, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT SHALL NOT BE INCLUDED IN ANY INDEMNITY OBLIGATION. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT EACH PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT SHALL BE THE SOLE AND EXCLUSIVE RESPONSIBILITY OF THE ACTOR.</u>

8.0 TAXES AND CLAIMS

8.1 Contractor agrees to pay all taxes, licenses, and fees levied or assessed on Contractor in connection with or incident to the performance of this Contract by any governmental agency and unemployment compensation insurance, old age benefits, social security, or any other taxes upon the wages of Contractor, its agents, employees, and representatives. Contractor agrees to require the same agreements and be liable for any breach of such agreements by any of its subcontractors.

8.2 Contractor agrees to reimburse Operator on demand for all such taxes or governmental charges, State or Federal, that Operator may be required or deem it necessary to pay, which arise out of work performed under this Contract by Contractor. Contractor agrees to furnish Operator with the information required to enable it to make the necessary reports and to pay such taxes or charges.

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 10 of 12

Case 7:12-cv-00033-RAJ   Document 25-1    Filed 09/14/12   Page 10 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 10 of 12

At its election, Operator is authorized to deduct all sums so paid for such taxes and governmental charges from such amounts as may be or become due to Contractor hereunder.

8.3  Contractor agrees to pay all claims for labor, materials, services, and supplies incurred by Contractor and agrees to allow no lien or charge to be fixed upon the rig, the lease, the well, the land on which the well is located, or other property of Operator or the party for whom Operator is performing services. Contractor agrees to indemnify, protect, defend, and hold Operator harmless from and against all such claims, charges, and liens. If Contractor shall fail or refuse to pay any claims or indebtedness incurred by Contractor in connection with the services as provided hereunder, it is agreed that Operator shall have the right to pay any such claims or indebtedness out of any money due or to become due to Contractor hereunder. Notwithstanding the foregoing, Operator agrees that it will not pay any such claim or indebtedness as long as same is being actively contested by Contractor and Contractor has taken all actions necessary (including the posting of a bond when appropriate) to protect the property interests of Operator and any other party affected by such claim or indebtedness.

8.4  Before payments are made by Operator to Contractor, Operator may require Contractor to furnish proof that there are no unsatisfied claims for labor, materials, equipment and supplies, or for injuries to persons or property not covered by insurance.

## 9.0  LAWS, RULES AND REGULATIONS

9.1  Operator and Contractor, agree to comply with all laws, rules, and regulations which are now or may become applicable to operations covered by this Contract or arising out of the performance of such operations. If either party is required to pay any fine or penalty resulting from the other party's failure to comply with such laws, rules or regulations, the party failing to comply shall reimburse the other for any such payment within fourteen (14) days of such payment being made.

9.2  In the event any provision of this Contract is inconsistent with or contrary to any applicable law, rule or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule or regulation and this Contract, as so modified, shall remain in full force and effect.

9.3  This Contract shall be construed, governed, interpreted, enforced and litigated and the relations between the parties determined in accordance with the laws of Texas, without regard, however, to any choice of laws or conflicts of laws provisions which would direct the application of the laws of another jurisdiction.

## 10.0  FORCE MAJEURE

Except for the duty to make payments when due and the indemnification provisions under this Contract, neither Operator nor Contractor shall be responsible to the other for any delay, damage or failure caused by or occasioned by a Force Majeure Event. As used in this Contract, "Force Majeure Event" includes acts of God, action of the elements, warlike action, insurrection, revolution or civil strife, piracy, civil war or hostile action, strikes, differences with workers, acts of public enemies, federal or state laws, rules and regulations of any governmental authorities having jurisdiction in the premises or any other group, organization or informal association (whether or not formally recognized as a government), inability to procure material, equipment or necessary labor in the open market, acute and unusual labor, material or equipment shortages, or any other causes (except financial) beyond the control of either party. Delays due to the above causes or any of them shall not be deemed to be a breach of or failure to perform under this Contract. Neither Operator nor Contractor shall be required against its will to adjust any labor or similar disputes except in accordance with applicable law.

## 11.0  ASSIGNMENTS

Operator and Contractor agree that neither will assign nor delegate this Contract or any of the work or services required under this Contract, except for work normally performed by subcontractors, and shall not assign any sum that may accrue to Contractor under this Contract, without prior written consent of the

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 11 of 12
Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 11 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 11 of 12

other party, provided however, that Contractor may, without the consent of Operator, assign this contract to an affiliate of Contractor, including without limitation, by merger or consolidation of Contractor with such affiliate. If any assignment by Operator is made that significantly alters Contractor's financial burden, Contractor's compensation shall be adjusted to give effect to any change in Contractor's operating costs.

## 12.0 GIFTS AND GRATUITIES

It is considered to be in conflict with the Operator's interest for its employees or any member of their immediate family to accept gifts, payments, extravagant entertainment, services, or loans in any form from anyone soliciting business, or who may already have established business relations with the Operator. Gifts of nominal value and entertainment, meals and social invitations that are customary and proper under the circumstances and do not place the recipient under obligation are acceptable. If any employee of the Operator should solicit a gift or gratuity from the Contractor, Contractor hereby agrees to notify an officer of the Operator of such act. It is agreed that the Operator will hold such notification in confidence. It is further understood that failure by the Contractor to comply with this policy regarding gifts and gratuities may, at the Operator's option, result in the termination of this Contract and may further preclude any future dealings between the parties.

## 13.0 ILLEGAL DRUGS, ALCOHOL AND FIREARMS

13.1 It is the policy of Operator and a requirement under its third party contracts, that Operator's Drug, Alcohol and Firearm Policy shall be applicable to all subcontractors of Operator. Contractor represents that it, and, if applicable, its employees and subcontractors, is familiar with the policy and will comply with it while engaged in all work. In order to ensure compliance with said policy, Contractor, and, if applicable, Contractor's employees and subcontractors, may be required to submit to and pass a drug screen prior to reporting to work on Operator's premises or a third party owned job site and at random intervals when any work is being performed pursuant to this Contract. To the extent the work performed by Contractor falls under the drug and alcohol testing requirements of the U.S. Department of Transportation, Contractor shall comply with such requirements.

13.2 Operator and any third party for whom Operator is performing work specifically reserve the right to carry out reasonable searches of individuals, their personal effects, and vehicles when entering, on, or leaving the premises where work is performed. Operator shall initiate the searches in accordance with its policies and procedures.

13.3 Individuals found in violation will be immediately removed from the premises where work is performed. Submission to such a search is strictly voluntary however, refusal may be cause for not allowing that individual on the well site or Operator's other premises. It is Contractor's responsibility to notify its employees of this policy and its enforcement.

13.4 All required personal protective equipment (PPE) for each work location shall be provided by Contractor to Contractor personnel. Operator shall provide PPE to Operator personnel on the work location. All PPE shall be as required by Operator and Contractor Health, Safety, and Environmental Requirements. Should any individual enter the worksite without the appropriate PPE, the Contractor or Operator Supervisory Personnel shall demand that the PPE requirement be observed or the individual will be required to leave the job site until the PPE is acquired and worn at the job location.

## 14.0 GOVERNMENT REGULATIONS

The following regulations, when required by law, are incorporated in the Contract by reference as if fully set out:

(1) The Equal Opportunity Clause prescribed in 41 CFR 60-1.4;

(2) The Affirmative Action Clause prescribed in 41 CFR 60-250.4 regarding veterans and veterans of the Vietnam era;

Case 7:12-cv-00033-JRN   Document 34-5   Filed 12/07/12   Page 12 of 12
Case 7:12-cv-00033-RAJ   Document 25-1   Filed 09/14/12   Page 12 of 12
Case 7:12-cv-00033-RAJ   Document 21-10   Filed 06/19/12   Page 12 of 12

(3) The Affirmative Action Clause for handicapped workers prescribed in 41 CFR 60-741.4;

15.0 CONFIDENTIAL INFORMATION

All information obtained by Contractor in the conduct of work under this Contract, including, but not limited to, depth, formations penetrated, the results of coring, testing and surveying, shall be considered confidential and shall not be divulged by Contractor or its employees, to any person, firm, or corporation other than Operator's designated representatives.

16.0 NOTICES AND PLACE OF PAYMENT

All notices to be given with respect to this Contract, unless otherwise provided for, shall be given in writing to the Operator and the Contractor respectively at the fax numbers hereinabove shown. All sums payable hereunder to Contractor shall be payable at its address hereinabove shown unless otherwise specified herein.

17.0 ACCEPTANCE OF CONTRACT

IN WITNESS WHEREOF, the parties hereto have executed this Contract upon the date above shown in several counterparts, each of which shall be considered as an original.

This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all negotiations, prior discussions, prior agreements and understandings relating to the subject matter hereof. This Agreement may not be modified or amended except by an express written Amendment assigned by both parties.

CONTRACTOR:
Basic Energy Services, L.P.
By Basic Energy Services GP, LLC
Its General Partner

BY: _____
PRINT
NAME: Mark Rankin

TITLE: Vice President, Risk Management

OPERATOR:

Endeavor Energy Resources, L.P.
By: Endeavor Petroleum, LLC
Its General Partner.

BY: _____
PRINT
NAME: Autry C. Stephens

TITLE: Sole Member